HYDE, APPELLANT, *v.* STATE MEDICAL BOARD, APPELLEE.

(No. 86AP-475—Decided December 30, 1986.)

*Taft, Stettinius & Hollister, Thomas C. Hill* and *A. Brian Dengler,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Mary Joseph Maxwell,* for appellee.

REILLY, J. This is an appeal from a judgment of the Franklin County Court of Common Pleas affirming the State Medical Board's decision to deny appellant a license to practice medicine in Ohio.

Appellant, David Estlow Hyde, M.D., a native Ohioan who was unable to matriculate into a medical school in the United States, completed two semesters of medical training at the Universidad Autonoma de Guadalajara in Mexico, a board-approved school. He then transferred to another board-approved medical school, Universidad Central del Este in the Dominican Republic, where he completed five semesters. Subsequently, he attended the Universidad Nordestana for three semesters and received his diploma. While attending Nordestana, he was enrolled in an externship program where he completed clinical rotations in hospitals in Springfield, Ohio for academic credit. Nordestana allowed him to complete his externship program in the United States and return to Nordestana at the semester's end for his examinations. Although the two prior schools were approved by the board, Nordestana was not.

After receiving his medical degree, appellant passed the examination given by the Educational Commission of Foreign Medical Graduates ("ECFMG") and the Federation Licensing Examination ("FLEX"), given by the Federation of State Medical Boards. He also completed two years of residency at Good Samaritan Hospital in Dayton, Ohio under the direction of the Department of Family Practice at Wright State University Medical School and approved by the Liaison Committee on Medical Education ("LCME").

Appellant submitted applications to the Ohio State Medical Board for temporary and permanent licenses to practice medicine in Ohio. After the statutory notice informing him that the board proposed to deny both applications, a hearing was held. Thereafter, the hearing officer filed her report and recommendation advising the board to deny appellant a license. The board adopted this report and recommendation.

Appellant filed a timely notice of appeal with the Franklin County Court of Common Pleas. The court issued a decision stating that although the board's "Fifth Pathway" requirement is not in accordance with the law, Dr. Hyde could not rely on his externships in Springfield, Ohio to meet the statutory clinical training requirement of R.C. 4731.09(B)(3) since it was used for the purposes of fulfilling an academic requirement. Dr. Hyde filed a "Motion for Correction of Fact in Court's Decision" since it was the residency at Good Samaritan Hospital in Dayton that he wanted equated with the statutory requirement of clinical training. The court denied the motion and entered a judgment affirming the order of the State Medical Board.

Appellant has asserted the following assignments of error:

"1. The common pleas court erred in failing to order the board to issue Dr. Hyde a full license to practice medicine.

"2. The common pleas court erred in failing to order the board to issue Dr. Hyde a temporary license to practice medicine.

"3. The common pleas court erred in affirming the board's order based on findings of fact not supported by reli-

able, substantial and probative evidence."

Appellant's first and third assignments of error are interrelated and are considered together. The facts present a conflict between the right of a citizen to follow a profession and the right of the state to protect the health and welfare of its citizens. The state, through its police powers, may interfere with the rights of an individual to practice medicine by placing reasonable restrictions on the profession without violating any state or federal constitutional provisions. *State, ex rel. Copeland,* v. *State Medical Bd.* (1923), 107 Ohio St. 20, 140 N.E. 660. It is not relevant that the conditions for the licensing of the practice of medicine and surgery are rigorous and exacting, as long as they are reasonable. *Williams* v. *Scudder* (1921), 102 Ohio St. 305, 131 N.E. 481. The General Assembly has vested the medical board with the power of examining applicants to determine their fitness to practice medicine. The power conferred upon the State Medical Board is administrative and not judicial within the meaning of Section 1, Article IV, Ohio Constitution. *France* v. *State* (1897), 57 Ohio St. 1, 47 N.E. 1041.

The prerequisites applicable to appellant's situation, a United States citizen graduated from a foreign medical school but not fully licensed in that foreign country, are set forth in R.C. 4731.09(B), as follows:

"A United States citizen who completed his undergraduate studies at a college or university in the United States approved for preliminary training by the state medical board and who has studied medicine at a medical school located outside the United States which is listed by the world health organization but who is not authorized to practice all branches of medicine or surgery in the foreign country in which he studied medicine shall be admitted to the examination upon completion of each of the following requirements:

"(1) The applicant successfully completed all of the formal requirements of the foreign medical school except internship or social service requirements.

"(2) The applicant attained on a qualifying examination acceptable to the state medical board a score satisfactory to a medical school approved by the liaison committee on medical education.

"(3) The applicant successfully completed one academic year of supervised clinical training at a hospital affiliated with a medical school approved by the liaison committee on medical education and, subsequent to that year, one year of internship or residency at a hospital in the United States having an internship or residency program approved by the state medical board."

The first issue is whether the Nordestana Medical School is listed by the World Health Organization as required by R.C. 4731.09(B) and Ohio Adm. Code 4731-3-16(A)(5). Appellee argues that the school is not listed since it did not appear in the 1970 edition of the World Health Organization Directory. The 1970 edition includes those schools which were listed by their host countries as "recognized institutions of education that confer a medical degree or diploma." It is the board's policy to determine if a school is listed in the 1970 edition since the standards in subsequent editions were changed.

In subsequent editions, the member states replied to a questionnaire, merely confirming the existence of the schools. Since Nordestana is a new school, which opened in 1978, it could not have been listed in the 1970 World Health Organization Directory.

However, the board made a provision for evaluating schools not listed in the 1970 directory. The board sent a fifty-page questionnaire, in English, to Nordestana. Since Nordestana is a Spanish-speaking institution, appellant was unable to persuade the administration to complete the questionnaire and return it to the board.

The board further contends that even if it accepted a listing in a subsequent edition, Nordestana still would not meet the statutory requirement. Nordestana was only mentioned in an explanatory footnote in the 1979 fifth edition while other schools had a detailed description of curricula. Hence, the board maintains, the footnote does not constitute a "listing" and does not meet the statutory requirement.

A diploma from a medical institution, offered by a candidate to practice medicine or surgery as evidence of his qualification, is required by statute to be one from an institution in "good standing" as defined by the board. R.C. 4731.09. The statute, however, does not define what constitutes a medical institution in "good standing." The question of whether a diploma presented by one who seeks a certificate to authorize him to practice medicine is from a medical institution in good standing is to be determined in the first instance not by the court, but by the board. *State, ex rel. Attorney General*, v. *Hygeia Medical College* (1899), 60 Ohio St. 122, 54 N.E. 86. Neverthless, the board cannot abridge the powers granted to it by the legislature.

Appellant argues that the mention of Nordestana in the 1979 fifth edition constitutes a "listing" for the purposes of the statute. Appellant offered into evidence at the hearing a letter from a representative of the World Health Organization. This letter was received shortly after the board had held its hearing and made a determination as to appellant's status. The letter stated in pertinent part:

"* * * The Universidad Nordestana, San Franciso de Macoris, Dominican Republic has not appeared in the *Chronicle*, since it was already in the fifth edition of the directory. * * *"

Appellant also argues that the board's policy requiring that the school be listed in the 1970 World Health Organization Directory is void because it was never properly adopted and the board acquired rule-making authority only after the time of applying this rule to appellant's case. Thus, appellant maintains that the rule as applied to appellant is improper, invalid, and has no effect. R.C. 1.58(A)(1) and 119.02.

The scope of review in this case was set forth by this court in *Angelkovski* v. *Buckeye Potato Chips Co.* (1983), 11 Ohio App. 3d 159, 11 OBR 242, 463 N.E. 2d 1280, at the second and third paragraphs of the syllabus:

"2. The role of the court of common pleas upon appeal from the Unemployment Compensation Board of Review based upon factual grounds is limited to determining whether the board's decision is supported by evidence in the record. A decision supported by some competent, credible evidence going to all the essential elements of the dispute will not be reversed as being against the manifest weight of the evidence.

"3. An appellate court, in reviewing a determination of a court of common pleas on manifest weight of the evidence on appeal from the board of review, may reverse only upon a showing that the trial court abused its discretion. In this context, abuse of discretion connotes more than an error of judgment; it implies a decision which is without a reasonable basis, one which is clearly wrong."

The Supreme Court also wrote in *Univ. of Cincinnati* v. *Conrad* (1980),

63 Ohio St. 2d 108, at 111, 17 O.O. 3d 65, at 67, 407 N.E. 2d 1265, at 1267-1268, as follows:

"In undertaking this hybrid form of review, the Court of Common Pleas must give due deference to the administrative resolution of evidentiary conflicts. For example, when the evidence before the court consists of conflicting testimony of approximately equal weight, the court should defer to the determination of the administrative body, which, as the factfinder, had the opportunity to observe the demeanor of the witnesses and weigh their credibility. However, the findings of the agency are by no means conclusive."

The board's policy requiring a medical school to be listed in the 1970 World Health Organization Directory was in fact never properly adopted pursuant to R.C. 119.02. The board had no authority to promulgate any rules relating to R.C. 4731.09. This section does not contain any express language that would give the board the authority to promulgate rules and regulations as the board finds necessary to effect the purpose of this section. Compare R.C. 4731.291. Since the policy changed the meaning of the statute, the board usurped any power given to it by the legislature. The rule (policy) was improper and consequently invalid. R.C. 1.58(A)(1). The board's decision to deny appellant a medical license on this basis was not in accordance with law and not properly promulgated pursuant to R.C. 119.02. Thus, the trial court's decision, affirming the board's action, constituted an abuse of discretion. See *Kinney* v. *Dept. of Admin. Services* (1984), 14 Ohio App. 3d 33, 14 OBR 37, 469 N.E. 2d 1007. The judgment of the trial court was without a reasonable basis. *Angelkovski, supra.*

The board's regulation, Ohio Adm. Code 4731-3-16(A)(5), concerning the requirement of one academic year of supervised clinical training, is also not in accordance with law. See R.C. 4731.09(B)(3).

R.C. 4731.09(B)(3) requires an applicant to complete:

"* * * [O]ne academic year of supervised clinical training at a hospital affiliated with a medical school approved by the liaison committee on medical education and, subsequent to that year, one year of internship or residency at a hospital in the United States having an internship or residency program approved by the state medical board."

The board's regulation clarified that the one year of academic clinical training must be met through the Fifth Pathway Program and not for the purpose of fulfilling the clinical training requirement of a foreign school. Ohio Adm. Code 4731-3-16(A)(5). The Fifth Pathway Program was implemented to provide a more closely supervised clinical training program for United States citizens returning to the United States after having completed medical school in a foreign country. It was designed to supplement the medical education of United States citizens desiring to practice in the United States but graduating from Mexican medical schools whose standards were not considered to be as stringent. In any event, the board did not properly promulgate this regulation since Ohio law requires that an agency, such as a medical board, not adopt general policies unless the agency complies with the procedures in R.C. Chapter 119. The board offered no testimony to show that it attempted to rectify the situation by ratifying the regulation which it improperly applied in appellant's case.

It is undisputed that appellant completed two years of clinical training as a resident in the Family Practice Program at Good Samaritan Hospital

in Dayton, Ohio. Appellant contends that, at the hearing, the board stipulated to the fact that this clinical training would meet the statutory requirement of R.C. 4731.09(B). The board's appellate counsel, however, argues that its former counsel only stipulated that appellant had completed a two-year residency and not that the residency program substituted for the one year of academic clinical training as required by the statute. See R.C. 4731.09(B). The stipulation reads as follows:

"MR. HILL: Well, if we can just stipulate that he has successfully completed two years of clinical training as a resident in the Family Practice program at Good Samaritan Hospital in Dayton."

The board subsequently acquired rule-making authority, but Ohio Adm. Code 4731-3-16(A)(5) was not properly in effect at the time of the board's ruling which denied appellant his permanent and temporary medical licenses. Thus, the rule is invalid as it applies to appellant. R.C. 1.58. The board's decision to deny appellant a medical license on this basis was not in accordance with law. Hence, the trial court correctly held that the "Fifth Pathway" requirement was not in accordance with law.

Although the "Fifth Pathway" requirement was not in accordance with law, the purpose of the Fifth Pathway Program was to provide a more closely supervised clinical training program and upgrade the medical education of graduates of foreign medical schools desiring to practice in the United States. Appellant has acted in accordance with this purpose. His two years of clinical training at Good Samaritan Hospital in Dayton, Ohio, a hospital affiliated with a medical school approved by the Liaison Committee on Medical Education, fulfilled the purpose of the board's requirement of "Fifth Path-way" training since appellant's successful completion of this residency program would indicate his medical skills were acceptable.

In sum, it was unreasonable for the board to deny Dr. Hyde a license to practice medicine in Ohio based on regulations that were not properly promulgated and, consequently, were invalid and of no effect. Therefore, since the school was listed by the World Health Organization in its 1979 edition, and since he fully complied with R.C. 4731.09(B)(3), the trial court abused its discretion in denying Dr. Hyde a permanent license to practice medicine in Ohio. The medical board's decision was contrary to law and not supported by reliable, substantial, and probative evidence. Based on the foregoing rationale, appellant's first and third assignments of error are well-taken.

Appellant's second assignment of error asserts that the trial court erred by not ordering the board to issue a temporary license to him. The trial court correctly held that the issue was moot since Dr. Hyde had moved and accepted a residency in Indiana. This court, based on the disposition of appellant's first and third assignments of error, also finds the issue to be moot. Consequently, Dr. Hyde's second assignment of error is not well-taken.

For the foregoing reasons, the second assignment of error is overruled and appellant's first and third assignments of error are sustained. The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

STRAUSBAUGH, J., concurs.

McCORMAC, J., dissents.

McCormac, J., dissenting. Dr. Hyde is a United States citizen who graduated from a foreign medical school and seeks a license to practice medicine in Ohio. R.C. 4731.09(B) requires that the foreign medical school be listed by the World Health Organization. What it means to be listed by the World Health Organization is ambiguous, particularly in light of the history of listing by that organization. At the time R.C. 4731.09(B) was promulgated, the World Health Organization listed only those schools which their host countries had approved as "recognized institutions of education that confer a medical degree or diploma." The 1970 edition of the World Health Organization Directory included only institutions which met that criterion. In subsequent editions of the directory, schools were listed merely because they answered a World Health Organization's questionnaire without regard to recognition by their host countries. Consequently, the State Medical Board required either that the foreign medical school be listed in the 1970 World Health Organization Directory or in an earlier edition to give substance to the requirement of "listing," which appears to have been contemplated by the General Assembly in setting forth this requirement in R.C. 4731.09(B). If the foreign medical school was not so listed (as would not be possible in the event of a medical school founded since 1970 as was the Universidad Nordestana), the board allowed approval of the school if it responded appropriately to a questionnaire designed by the board to help it determine the adequacy of the program offered by the school. Universidad Nordestana was sent such a questionnaire but it has failed to respond to it.

Additionally, it is ambiguous and debatable whether Universidad Nordestana has been "listed" in editions of the World Health Organization Directory published after 1970. Nordestana was only mentioned in an explanatory footnote in the 1979 fifth edition, while other schools had a detailed description of their curricula. In these later editions, such as the 1979 edition, schools were listed because they answered a World Health Organization questionnaire even though it was done without regard to recognition by their host country. The footnote reference may indicate that Universidad Nordestana also failed to answer the questionnaire of the World Health Organization, thus not providing it information that would be helpful to the determination of whether the school had an adequate medical program.

Whether Universidad Nordestana was "listed" by the World Health Organization was debatable and properly subject to initial determination by the medical board regardless of whether the medical board had adopted a rule in this respect. The issue of listing of the Universidad Nordestana by the World Health Organization is to be determined in the first instance, not by the court, but by the board. The board did not abuse its discretion in considering the Universidad Nordestana to be a medical school not listed by the World Health Organization, nor did the common pleas court abuse its discretion in finding that the board's determination was supported by reliable, substantial, and probative evidence and was in accordance with law. Certainly, the intent of the General Assembly was to protect the citizens of Ohio from medical practice by physicians who had not received appropriate medical training. Based upon the lack of information about the Universidad Nordestana, it may, for all we know, be a Dominican Republic medical school, such as that caricatured in Doonesbury. The only

testimony about its program was presented by Dr. Hyde. His testimony was rejected by the board as being suspect. He was unaware of many of the important details that were covered by the questionnaire that Nordestana failed to return. It is interesting to note that, although as the majority noted, Dr. Hyde passed the ECFMG examination, it was after three attempts. He also took the FLEX examination twice before passing it. It is further noted that Dr. Hyde was transferred to Nordestana from Central del Este, another medical school in the Dominican Republic, but one which was listed in the 1970 edition of the World Health Organization Directory. Dr. Hyde failed to pass plastic surgery at Central del Este and there were also four or five other courses that he did not pass. He took neurology three times before passing it at Nordestana.

In short, this court is making a grave mistake in substituting its judgment for that of the State Medical Board to require the board to license a graduate of a foreign medical school of completely unknown calibre to practice medicine in Ohio.

The judgment of the trial court should be affirmed.