JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant John F. Zak, D.M.D., M.D. ("Dr. Zak") appeals from a decision of the Cuyahoga County Court of Common Pleas affirming the decision of the Ohio State Dental Board ("the Board") to revoke his license to practice dentistry. For the following reasons, we affirm.
 {¶ 2} A review of the record reveals the following facts: Dr. Zak received his dental degree in 1993 and his medical degree in 1998. Dr. Zak holds licenses to practice medicine and dentistry in Ohio.
 {¶ 3} Dr. Nicholas C. Diamantis ("Dr. Diamantis") received his dental degree in 1991 and his medical degree in 1994. Dr. Diamantis holds a license to practice medicine in Ohio and is board-certified in oral and maxillofacial surgery, a dental specialty recognized by the American Dental Association (ADA). Dr. Diamantis does not have a license to practice dentistry in Ohio because he was unable to pass the examinations necessary to obtain a dental license.[1]
 {¶ 4} In February 1998, Dr. Zak and Dr. Diamantis purchased a dental practice established by Dr. T.F. Sinclair, who is an oral, maxillofacial surgeon, and began conducting business under the trade name Western Reserve Center for Orofacial and Cosmetic Surgery. Upon obtaining the business, Dr. Zak and Dr. Diamantis retained three or four members of Dr. Sinclair's office staff to perform billing for the practice. Upon beginning their practice, Dr. Zak and Dr. Diamantis created a referral slip which permitted third-party dentists or doctors to refer patients to their practice and listed 25 procedures, some of which were dental in nature, that were to be performed by Dr. Zak and Dr. Diamantis.
 {¶ 5} Dr. Zak and Dr. Diamantis were the sole and equal shareholders and directors of the business, and provided professional services from offices in Canton and Lakewood and at area hospitals. The Articles of Incorporation for the business state, in pertinent part, "The purposes for which the Corporation is formed are to practice the profession of dentistry and to: 1. Engage in every phase and aspect of the general practice of dentistry * * *."
 {¶ 6} In 1998, Dr. Diamantis was charged with one count of practicing dentistry without a current license in violation of R.C. 4715.09. The complaint alleged that Dr. Diamantis performed a tooth extraction on one patient despite not having a dental license. On March 19, 1999, the charges against Dr. Diamantis were dismissed on the grounds that Dr. Diamantis was exempt from the licensure requirements under R.C. 4715.34 because the State had not demonstrated that his practice was "dentistry as a specialty." See State v. Diamantis (March 19, 1999), Canton Municipal Court, Case No. 98 CRB 05686.
 {¶ 7} On February 15, 2001, Dr. Zak was given notice by the Board of its intent to suspend or revoke his dental license based upon allegations that (1) he permitted Dr. Diamantis to unlawfully perform tooth extractions without holding a license to practice dentistry (Counts 1 through 28), and (2) billed insurance carriers in his own name for tooth extractions provided by Dr. Diamantis, an unlicensed dentist (Counts 29-39).
 {¶ 8} On May 8, 2001, Dr. Zak filed a motion for summary judgment, which was construed as a motion in limine[2]
alleging that the Board was collaterally estopped from determining that Dr. Zak permitted the unlicensed practice of dentistry in his office because the issue had already been decided against the State in the criminal case initiated against Dr. Diamantis in 1998. On May 14, 2001, the Board granted this motion and prohibited the Board from introducing evidence concerning Counts 1 through 28, on the grounds that the Board was bound by the prior judicial determination made in State v.Diamantis, supra.
 {¶ 9} A formal hearing was conducted on May 30, 2001. At the hearing, which was limited to Counts 29 through 39, Dr. Zak admitted that he had individual dental provider agreements with dental insurance companies and that Dr. Diamantis did not. Dr. Zak also admitted that claims were submitted to insurance companies under his name and license number, indicating that he performed the work, when the dental procedures were, in fact, performed by Dr. Diamantis. Dr. Zak stated that his office staff was responsible for the insurance billing activities and that he did not participate or have knowledge of the billing methods. Dr. Zak stated that he authorized the office staff to either sign his name or use a signature stamp.
 {¶ 10} On August 30, 2001, the hearing examiner issued his report and determined that Dr. Zak's conduct, in submitting claims for insurance benefits to dental insurance providers under the premise that he had performed the services, when he knew he had not performed the services and knew the claims were for services performed by Dr. Diamantis, violated R.C. 4715.30(A)(2) and (9) and 4715.30(B) and recommended the indefinite suspension of Dr. Zak's dental license.
 {¶ 11} On December 19, 2001, the Board rejected the hearing examiner's report as it pertained to the issue of permitting the unlicensed practice of dentistry and remanded the matter to the hearing examiner to take evidence on Counts 1 through 28.
 {¶ 12} On April 9 and 10, 2002, the hearing examiner conducted a hearing on Counts 1 through 28. At this hearing, Dr. Diamantis admitted that in his application for a license to practice dentistry in Ohio, he stated the following: "I am limiting my practice to Oral Surgery." Dr. Diamantis stated however that he never performed preventive dentistry (i.e. prophylaxis, fluoride treatments, sealants, teeth cleaning), restorative dentistry (i.e. filling cavities, installing crowns and bridges), cosmetic dentistry (i.e. installing caps, veneers), endodontics (root canals), periodontics (deep cleaning of the gums), or orthodontics (teeth straightening), and instead regularly performed head, neck and facial surgical procedures of all types, including trauma surgery, facial reconstruction surgery, and cosmetic procedures such as face lifts, and hair replacement. Dr. Diamantis admitted that he regularly performed tooth extractions.
 {¶ 13} At the hearing, Dr. Zak admitted that he entered into a partnership with Dr. Diamantis, knowing that he did not have a dental license, because he did not think that Dr. Diamantis needed to be licensed in both medicine and dentistry. Although Dr. Zak admits that he knew Dr. Diamantis performed tooth extractions, he states that he did not "permit" Dr. Diamantis to do anything and that he never supervised, employed, or gave direction to Dr. Diamantis.
 {¶ 14} On July 27, 2002, the hearing examiner issued another report which recommended the revocation of Dr. Zak's dental license based upon violations of R.C. 4715.01, 4715.30(A)(9) and (B), 4715.19, and 4715.09(A) (permitting an unlicensed operator to perform dentistry) and R.C. 4715.30(A)(2)(9) and (B), and4715.09(A) (billing insurance carriers for services provided by an unlicensed operator).
 {¶ 15} On September 18, 2002, the Board adopted the recommendation of the hearing examiner and permanently revoked Dr. Zak's license to practice dentistry.
 {¶ 16} Dr. Zak timely appealed to the Cuyahoga County Common Pleas Court on September 23, 2002. In its decision dated March 20, 2003, the trial court affirmed the revocation of Dr. Zak's license. It is from this decision that Dr. Zak now appeals and raises 23 assignments of error for our review, which are addressed together and out of order where appropriate.
 {¶ 17} "I. The trial court erred in holding that collateral estoppel did not preclude the Board from relitigating matters that were conclusively determined against the Board previously inState v. Diamantis.
 {¶ 18} In the first assignment of error, Dr. Zak argues that the Board is collaterally estopped from taking disciplinary action against him based upon Dr. Diamantis' failure to hold a dental license since the Canton Municipal Court dismissed the criminal charges against Dr. Diamantis and found that he was covered by the dental licensure exemption for licensed physicians under R.C. 4715.34 because he was not engaged in the practice of dentistry "as a specialty." We disagree.
 {¶ 19} Collateral estoppel, also known as issue preclusion, provides that an issue or a fact that was fairly, fully, and necessarily litigated and determined in a prior action, may not be drawn into question in a subsequent action between the same parties or their privies. State ex rel. Stacy v. Batavia LocalSchool Dist. Bd. of Edn., 97 Ohio St.3d 269, 2002-Ohio-6322. "Collateral estoppel applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party in the prior action." Thompson v. Wing (1994), 70 Ohio St.3d 176.
 {¶ 20} Here, the factual and legal issues in the criminal action and the administrative proceeding are not the same. InDiamantis, Dr. Diamantis was criminally charged with the unlawful practice of dentistry without a license based upon one
tooth extraction on one patient. (Emphasis added.) Here, Dr. Diamantis is alleged to have performed tooth extractions on 28 different patients. In Diamantis, the criminal court made a limited ruling that the extraction of a single tooth from a single patient did not establish that Dr. Diamantis was practicing dentistry as a "specialty" within the meaning of R.C.4715.34. Here, the Board is alleging an ongoing pattern of dental treatment by Dr. Diamantis such that he was practicing dentistry as a specialty within the meaning of R.C. 4715.34. Finally, in this case, Dr. Zak, not Dr. Diamantis, is charged with permitting an unlicensed person to practice dentistry. This issue was not even before the Diamantis court.
 {¶ 21} The factual and legal issues in the administrative proceeding against Dr. Zak are different than the limited factual issue present in the criminal proceeding against Dr. Diamantis. Accordingly, the first two elements of collateral estoppel are not present in this case. Furthermore, an acquittal in a criminal proceeding is not a bar to subsequent administrative charges since the burdens of proof in the criminal case and the administrative proceeding are different. See Hoge v. LiquorControl Comm. (1969), 18 Ohio App.2d 255. Since there is a lower standard of proof in an administrative hearing, criminal judgments are not given preclusive effect in civil or quasi-civil litigation. Walden v. State (1989), 47 Ohio St.3d 47, 52.
 {¶ 22} Assignment of Error I is overruled.
 {¶ 23} "III. The trial court erred in holding that R.C. §4715.34, on its face and as applied, is not unconstitutionally vague.
 {¶ 24} "IV. The trial court erred in holding that R.C. §4715.34, on its face and as applied, is not an unconstitutional delegation of legislative authority.
 {¶ 25} "V. The trial court erred in holding that R.C. §4715.34, on is face and as applied, is not an unconstitutional exercise of the police power."
 {¶ 26} In these three assignments of error, Dr. Zak raises constitutional challenges to R.C. 4715.34. Since statutes and other legislative enactments are to be afforded a strong presumption of constitutionality, the party asserting that a statute is unconstitutional must prove this assertion beyond a reasonable doubt in order to prevail. State v. Anderson (1991),57 Ohio St.3d 168, 171. With this principle in mind, we will proceed to address Dr. Zak's assignments of error.
 Vagueness {¶ 27} In his third assignment of error, Dr. Zak argues that R.C. 4715.34 is unconstitutionally vague since it does not fairly inform him of what the law prohibits and does not adequately define who is exempt from dental licensure requirements.
 {¶ 28} A statute is void for vagueness, and thus violative of due process if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute and because it encourages arbitrary and erratic arrests and convictions. Papachristou v. Jacksonville (1972), 405 U.S. 156,162. A statute is not considered void for vagueness merely because it could have been written more precisely. State v.Dorso (1983), 4 Ohio St.3d 60, 61.
 {¶ 29} R.C. 4714.34 provides in pertinent part that "Sections4715.01 to 4715.35, inclusive, of the Revised Code do not apply to a legally qualified physician or surgeon unless he practices dentistry as a specialty."
 {¶ 30} Dr. Zak argues that the word "specialty" is vague and ambiguous because a reasonable interpretation of it requires that the individual focus his profession "exclusively" on dental procedures. We disagree. Merriam Webster's Collegiate Dictionary defines "to specialize" as "to concentrate one's efforts in a special activity, field or practice." Neither the existing language in R.C. 4715.34 nor the dictionary definition make reference to exclusivity. See, also, Schweisberger v. Weiner
(Dec. 12, 1995), Stark App. Nos. 1994 CA 00291, 1995 CA 00367 (a "specialist" is "a physician who holds himself out as specially trained and qualified in a particular branch of medicine.")
 {¶ 31} We find that the language of R.C. 4715.34 is definite and that the inclusion of the word "specialty" does not lend itself to an interpretation that a physician must confine his or her practice exclusively to dentistry in order to be subject to its licensure requirements. Indeed, such an interpretation would allow a physician trained in dentistry to offer a full range of dental services and escape the requirements of R.C. Chapter 4715 as long as he or she also provided some non-dental services. This would clearly defeat the purposes served by R.C. Chapter 4715.
 {¶ 32} Assignment of Error III is overruled.
 Delegation of Legislative Authority {¶ 33} In his fourth assignment of error, Dr. Zak argues that R.C. 4715.34 is an unconstitutional delegation of legislative authority. We disagree.
 {¶ 34} A law which delegates discretion to an administrative body without providing guidelines is valid and constitutional if the law relates to the protection of the morals, health, safety, or general welfare of the public. Matz v. J.L. Curtis CartageCo. (1937), 132 Ohio St. 271.
 {¶ 35} The purpose of the Ohio Dental Act, R.C. Chapter 4715, is to safeguard the public's interest in having competent, properly trained and educated, and experienced dentists. In furtherance of this purpose, the Dental Board had promulgated standards for the safe practice of dentistry by qualified practitioners. See Ohio Adm. Code Chapter 4715.
 {¶ 36} R.C. 4715.34, which provides licensure exemptions to legally qualified physicians or surgeons who do not practice dentistry as a specialty, is a valid and constitutional law because it directly relates to the protection of the public and its interest in having a competent, properly trained and educated, experienced and licensed dentist.
 {¶ 37} Assignment of error IV is overruled.
 Police Power {¶ 38} In his fifth assignment of error, Dr. Zak argues that R.C. 4715.34 is an unconstitutional exercise of police power since it prohibits qualified licensed physicians from performing procedures clearly within the scope of their medical license. We disagree.
 {¶ 39} The opportunity to practice dentistry is not an unqualified right. All dentists must be licensed to practice pursuant to R.C. Chapter 4715. This is a justifiable exercise of a State's inherent police power because it is for the benefit of its citizens' health, safety, morals, and welfare. State MedicalBd. v. Miller (1989), 44 Ohio St.3d 136, 140; Blazic v. OhioState Dental Bd. (1993), 66 Ohio St.3d 240, 243; Hyde v. StateMed. Bd. (1986), 33 Ohio App.3d 309, 311. Dr. Zak has failed to sustain his burden of showing that the provisions of R.C. 4715.34
bear no substantial relation to the interests the State asserts. Assignment of Error V is overruled.
 {¶ 40} "II. The trial court erroneously interpreted R.C. §4715.34."
 {¶ 41} In the second assignment of error, Dr. Zak argues that the Board erred in finding that Dr. Diamantis was engaged in the practice of dentistry "as a specialty" and not covered by the dental licensure exemption for licensed physicians under R.C.4715.34. We disagree.
 {¶ 42} When reviewing an order of an administrative agency pursuant to R.C. 119.12, the common pleas court is limited to a determination of whether the order is supported by reliable, probative, and substantial evidence and is in accordance with the law. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621.
 {¶ 43} When reviewing the trial court's determination, however, the appellate court is limited to a determination of whether or not the trial court abused its discretion. Id. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. Here, we find no abuse of discretion.
 {¶ 44} In the previous assignment of error, we concluded that R.C. 4715.34 is not unconstitutionally vague and that a person holding himself out as a dentist and/or performing routine elective procedures must be licensed by the Dental Board and is not exempt under R.C. 4715.34. Since Dr. Diamantis regularly performed standard dental procedures during his partnership with Dr. Zak and held himself out as specially trained and qualified in a particular branch of dentistry (oral and maxillofacial surgery), he was required to have a dental license. The fact that he also performed other procedures, such as liposuction and hair transplants, does not mean that he is exempt under R.C. 4715.34. Indeed, the record does not establish that Dr. Diamantis intended to practice anything other than dentistry when he entered into business with Dr. Zak. The Articles of Incorporation for the business state, in pertinent part, "The purposes for which the Corporation is formed are to practice the profession of dentistry and to: 1. Engage in every phase and aspect of the general practice of dentistry * * *." The Articles provide that professional services of the corporation "shall be rendered only through those * * * who are duly licensed and authorized to practice dentistry in the State of Ohio." The Articles further authorize the investment of funds only for "such investments and property as are necessary for or incidental to the practice of dentistry." Capital stock of the corporation may only be issued "to persons who are duly licensed or otherwise legally authorized to practice dentistry in the State of Ohio." Nowhere in the Articles of Incorporation is there any indication that Dr. Diamantis intended to practice medicine or that the corporation was formed for the purposes of practicing medicine.
 {¶ 45} Accordingly, we hold that the Board had sufficient evidence to conclude that Dr. Diamantis was engaged in the practice of dentistry "as a specialty" and its decision that he was not covered by the dental licensure exemption for licensed physicians under R.C. 4715.34 is in accordance with the law.
 {¶ 46} Assignment of Error II is overruled.
 {¶ 47} "VI. The trial court erroneously interpreted R.C. §4715.01.
 {¶ 48} "VII. The trial court erroneously interpreted R.C. §4715.19.
 {¶ 49} "VIII. The trial court abused its discretion in finding that the Board's determination under R.C. § 4715.01 is supported by reliable, probative and substantial evidence.
 {¶ 50} "IX. The trial court abused its discretion in finding that the Board's determination under R.C. § 4715.19 is supported by reliable, probative and substantial evidence.
 {¶ 51} "XII. The trial court erroneously interpreted R.C. §4715.30(B).
 {¶ 52} "XIII. The trial court abused its discretion in finding that the Board's determination under R.C. § 4715.30(B) is supported by reliable, probative and substantial evidence."
 {¶ 53} In these assignments of error, Dr. Zak argues that the trial court abused its discretion in finding that the Board had reliable, probative, and substantial evidence to find that Dr. Zak permitted Dr. Diamantis to practice dentistry in violation of R.C. 4715.19, 4715.30(B) and 4715.01. We disagree.
 Violation of R.C. 4715.01 {¶ 54} R.C. 4715.01 provides, in pertinent part, that:
 {¶ 55} "Manager, proprietor, operator, or conductor as used in this section includes any person:
 {¶ 56} "(C) Who makes any other arrangements whereby he derives profit, compensation, or advantage through retaining the ownership or control of dental offices * * *.
 {¶ 57} "Whoever having a license to practice dentistry enters into any of the arrangements described in this section with, an unlicensed manager, proprietor, operator, or conductor may have his license suspended or revoked by the State Dental Board."
 {¶ 58} Merriam Webster's Collegiate Dictionary defines a "manager" as "a person who conducts business or household affairs." A "proprietor" is defined as "one who has the legal right or exclusive title to something: owner." An "operator" is defined as "one that operates a business." A "conductor" is defined as "one that conducts."
 {¶ 59} Here, Dr. Zak and Dr. Diamantis were equal partners and co-owners of the business. Clearly, they fall within the definition of managers/proprietors/operators of the practice in which Dr. Diamantis performed dental procedures. As such, we find that the Board had reliable, probative, and substantial evidence to find that Dr. Zak, a licensed dentist/manager, violated R.C.4715.01 when he entered into a partnership with Dr. Diamantis, an unlicensed dentist/manager, to derive profit from the practice of dentistry and that the Board's order was in accordance with law.
 Violation of R.C. 4715.19 and 4715.30(B) {¶ 60} R.C. 4715.19 provides, in pertinent part, that:
 {¶ 61} "No person, being a manager, proprietor, operator, or conductor of a place for performing dental operation, shall employ a person who is not a licensed dentist to perform dental operations or shall permit such person to practice dentistry in his office."
 {¶ 62} R.C. 4715.30(B) provides, in pertinent part, that:
 {¶ 63} "A manager, proprietor, operator, or conductor of a dental facility shall be subject to disciplinary action if any dentist providing services in the facility is found to have committed a violation listed in division (A) of this section and the manager, proprietor, operator, or conductor knew of the violation and permitted it to occur on a recurring basis."
 {¶ 64} Here, Dr. Zak admitted that he knew Dr. Diamantis was not a licensed dentist and was performing dental procedures on a regular basis in their office. Dr. Zak argues however that he did not "permit" the unauthorized practice of dentistry because he did not have the right to control or direct Dr. Diamantis' actions. We disagree. Merriam Webster's Collegiate Dictionary defines to "permit" as "1. To Consent to; allow" or 3. To afford opportunity to." Neither the existing language in R.C. 4715.19 or4715.30(B), nor the dictionary definition make reference to a "right to control or direct." Accordingly, we find that the Board had reliable, probative, and substantial evidence to find that Dr. Zak, a licensed dentist/manager, violated R.C. 4715.19 and4715.30(B) when he permitted/afforded the opportunity to Dr. Diamantis, an unlicensed dentist, to practice dentistry on a recurring basis and that the Board's order was in accordance with law.
 {¶ 65} Assignments of Error VI, VII, VIII, IX, XII, and XIII are overruled.
 {¶ 66} "X. The trial court erroneously interpreted R.C. §4715.30(A)(2).
 {¶ 67} "XI. The trial court abused its discretion in finding that the Board's determination under R.C. § 4715.30(A)(2) is supported by reliable, probative and substantial evidence."
 {¶ 68} In these assignments of error, Dr. Zak argues that the Board erred in finding that he is subject to discipline under R.C. 4715.30(A)(2) for billing insurance companies for services provided by Dr. Diamantis. We disagree.
 {¶ 69} R.C. 4715.30(A) provides, in pertinent part, that:
 {¶ 70} "(A) The holder of a certificate or license issued under this chapter is subject to disciplinary action by the state dental board for any of the following reasons:
 {¶ 71} "(2) Obtaining or attempting to obtain money or anything of value by intentional misrepresentation or material deception in the course of practice.
 {¶ 72} A violation of R.C. 4715.30(A)(2) occurs when a dentist submits claims to an insurance company for unsupervised work by an unlicensed person. See Kuppin v. Ohio State DentalBd. (May 6, 1994), Montgomery App. No. 14117. In Kuppin, the trial court affirmed the Board's decision that a dentist who represented that he was a patient's attending dentist on the insurance claim form, when in fact a non-licensed technician performed the dental work, engaged in a material deception and intentional misrepresentation. See, also, Blazic v. Ohio StateDental Bd. (1993), 66 Ohio St.3d 240 (a dentist violates R.C.4715.30(A)(2) when he bills an insurance company for the services of a surgical assistant when, in fact, he is assisted by a registered nurse.)
 {¶ 73} Here, it is undisputed that Dr. Zak submitted 11 bills to insurance companies for dental work claimed to be performed by him but actually performed by Dr. Diamantis. The insurance company representatives testified that because Dr. Diamantis was not in the provider networks, any claims submitted with his name would not have been paid. Clearly, Dr. Zak received a financial benefit by filing claims indicating himself as the provider of the services.
 {¶ 74} Dr. Zak argues that his office staff was responsible for the insurance billing activities and that he did not participate or have knowledge of their billing methods. The hearing examiner did not find this testimony to be credible and found there to be sufficient evidence to demonstrate Dr. Zak's knowledge and intent to have claims submitted on his behalf for the work done by Dr. Diamantis. Specifically, the hearing examiner found that Dr. Zak: "established an office protocol which, when followed by his staff, would result in claims being made under his name and signature that would falsely state that he performed dental procedures which, in fact, had been performed by Dr. Diamantis. He and Dr. Diamantis shared equally in establishing all billing procedures for the firm; he and Dr. Diamantis investigated how best to accomplish these procedures in March 1998, prior to beginning their practice. He modified the procedures used by Dr. Sinclair, ending the staff's practice of billing in Dr. Sinclair's name, and instituting a procedure by which bills would be submitted under his name alone, and not that of Dr. Diamantis. His staff carried out those procedures in a way that removed Dr. Zak from having to actually see or sign the claim forms sent under his signature. Dr. Zak authorized his staff to use his name, in typed form as well as by representing a signature through a signature stamp and hand-written signature, which Dr. Zak permitted others to sign for him."[3]
 {¶ 75} The hearing examiner also rejected Dr. Zak's argument that he had to have "actual knowledge" of the inappropriate billing methods in order to be in violation of the statute. The hearing examiner noted that "intent" is not required to violate R.C. 4715.30(A)(2) and that evidence of the circumstances in which the claims were made was sufficient to show the requisite knowledge or intent.
 {¶ 76} Based on the foregoing, we find that the trial court did not err in finding that the Board had reliable, probative, and substantial evidence to find that Dr. Zak violated R.C.4715.30(A)(2) when he billed insurance companies in his name for services actually provided by Dr. Diamantis and that the Board's order was in accordance with law.
 {¶ 77} Assignments of error X and XI are overruled.
 {¶ 78} "XIV. The trial court erred in holding that the Notice of Hearing did not violate R.C. § 119.07.
 {¶ 79} "XV. The trial court erred in holding that the Notice of Hearing did not violate Dr. Zak's due process rights."
 {¶ 80} In these assignments of error, Dr. Zak claims that he was not properly informed of the charges brought against him by the Board as required under R.C. 119.07. We disagree.
 {¶ 81} Under R.C. 119.07, an administrative agency must give notice of "the charges or other reasons for the proposed action, the law or rule directly involved, and a statement informing the party that he is entitled to a hearing if he requests it within thirty days of the time of mailing the notice." The party must be informed of the issues on which a decision will be made and the factual material on which the agency relies so that the individual may have the opportunity to rebut it. State ex rel.Canter v. Indus. Comm. (1986), 28 Ohio St.3d 377, 380. The failure to provide adequate notice of the issues to be considered by the agency unfairly prejudices the party by denying him or her a reasonable opportunity to be heard on that issue. State exrel. B.F. Goodrich Co. v. Indus. Comm. (1991),73 Ohio App.3d 271, 275.
 {¶ 82} Here, the Notice of Opportunity for Hearing informed Dr. Zak that the Ohio State Dental Board would be considering: (1) whether Dr. Zak allowed an unlicensed operator to perform dentistry on 28 different patients in violation of R.C. 4715.01,4715.30(A)(9) and (B), 4715.19, and 4715.09(A); and (2) whether Dr. Zak billed 11 of these patients' insurance carriers for the work done by the unlicensed operator in violation of R.C.4715.30(A)(2) and (9) and 4715.30(B), and 4715.09(A). Clearly, Dr. Zak was given sufficient notice of the issues that were going to be considered at the hearing and had the opportunity to present evidence in his favor on these issues. Dr. Zak's claim that the Notice was insufficient because it failed to specifically refer to R.C. 4715.34 is erroneous because he was not charged with violating that section of the statute. Rather, Dr. Zak raised this section as a defense to some of the charges brought against him.
 {¶ 83} Assignments of Error XIV and XV are overruled.
 {¶ 84} "XVI. The trial court erred in holding that the Board had not denied Dr. Zak's rights under R.C. § 119.09 to call and question certain witnesses in the administrative hearing.
 {¶ 85} "XVII. The trial court erred in holding that the Board had not denied Dr. Zak's due process rights to call and question certain witnesses in the administrative hearing.
 {¶ 86} "XVIII. The trial court abused its discretion by denying Dr. Zak's Motion for Permission to Conduct Discovery.See the trial court's November 25, 2002 order, denying Dr. Zak's November 20, 2002 motion."
 {¶ 87} In these assignments of error, Dr. Zak argues that the hearing examiner improperly quashed three subpoenas served upon members of the Board. We disagree.
 {¶ 88} Under R.C. 119.09, an administrative agency "upon the request of any party shall issue a subpoena for any witness or a subpoena duces tecum to compel the production of any books, records, or papers." However, pursuant to R.C. 4715.03(D), "proceedings of the board relative to the investigation of a complaint or the determination whether there are reasonable grounds to believe that a violation of this chapter has occurred are confidential and are not subject to discovery in any civil action."
 {¶ 89} Here, Dr. Zak requested subpoenas for the attendance of three Board representatives: Dr. Lightfoot, the Secretary of the Board, Dr. Murphy, a sitting Board member, and Tom Smith, an investigator of the Board. The subpoena to Dr. Lightfoot directed him to produce all documents relating to Board-initiated investigations of physicians practicing dentistry without a license. The subpoena to Dr. Murphy directed him to give his expert opinion as an oral and maxillofacial surgeon as to whether certain procedures constituted the practice of dentistry. Finally, the subpoena to Tom Smith directed him to produce all documents relating to Dr. Diamantis' criminal case.
 {¶ 90} The hearing examiner quashed the subpoenas issued to Dr. Lightfoot and Tom Smith because Dr. Zak failed to set forth a basis that these witnesses would have any relevant information that would not be barred by the privilege found in R.C.4715.03(D). The hearing examiner also quashed the subpoena issued to Dr. Murphy on the basis that Dr. Murphy is a sitting Board member who would be called upon to conduct a quasi-judicial function upon receipt of the hearing examiner's report and recommendation.
 {¶ 91} We do not find that Dr. Zak's statutory and due process rights were violated by the hearing examiner's decision to quash the subpoenas. The documents requested of Dr. Lightfoot and Tom Smith were precluded by R.C. 4715.03(D). The testimony of Dr. Murphy as an expert for Dr. Zak would have been inappropriate given that Dr. Murphy would later be called upon to testify regarding the hearing examiner's report and recommendation. Dr. Zak could have called his own independent expert to supply the testimony he sought from Dr. Murphy.
 {¶ 92} Assignments of error XVI, XVII, and XVIII are overruled.
 {¶ 93} "XIX. The trial court erred in holding that the Hearing Examiner was not biased against Dr. Zak, and therefore had not violated Dr. Zak's right to a hearing under R.C. Chapter 119.
 {¶ 94} "XX. The trial court erred in holding that the Hearing Examiner was not biased against Dr. Zak, and therefore had not violated Dr. Zak's due process rights."
 {¶ 95} In these assignments of error, Dr. Zak argues that the hearing examiner was biased against him and did not conduct the hearing and proceedings in a fair and impartial manner. Since the decision of an administrative agency is presumed to be valid and reached in a sound manner, the party asserting bias or prejudice must prove that the hearing examiner was biased, partial or prejudiced to such a degree that his presence adversely affected the Board's decision. West Virginia v. Ohio Hazardous Waste
(1986), 28 Ohio St.3d 83, 86. With this principle in mind, we will proceed to address Dr. Zak's assignments of error.
 {¶ 96} As his first example of alleged bias, Dr. Zak argues that the findings of fact contained in the August 30, 2001 Report and Recommendation with regard to the insurance billing issues were not supported by the evidence. We disagree. The hearing examiner prepared a 48-page Report and Recommendation which contained a detailed synopsis of the evidence presented at the hearing and a thorough analysis of how Dr. Zak's conduct violated the insurance billing provisions of R.C. 4715.30(A)(2). We find no evidence of bias in the hearing examiner's findings of fact.
 {¶ 97} Next, Dr. Zak argues that the recommended sanction of indefinite suspension contained in the August 30, 2001 Report and Recommendation was harshly punitive and disproportionate. Dr. Zak also argues that the hearing examiner ignored evidence that remedial measures had been implemented with regard to the way insurance claims were handled. We disagree. First, in the Summary of the Evidence in the August 30, 2001 Report and Recommendation, the hearing examiner specifically noted the change in billing procedures undertaken by the office and that Dr. Diamantis entered into a provider agreement with Delta in March 2001. Thus, the hearing examiner did not "ignore" any evidence. Second, the penalty recommended by the hearing examiner is an authorized sanction under R.C. 4715.30(C). Accordingly, we find no evidence of bias in the hearing examiner's recommendation.
 {¶ 98} Next, Dr. Zak argues that the hearing examiner's reversal of an earlier ruling on collateral estoppel is evidence of bias. We disagree. Although the hearing examiner recommended that the State be prohibited from presenting evidence that Dr. Diamantis practiced dentistry without a license based upon the decision in the Canton Municipal Court,[4] a dismissal of charges can only be done by a majority of the Board. See R.C.4715.03(D). It is the Board, and not the hearing examiner, who made the ultimate determination that the matter should be remanded as it pertained to the issue of whether Dr. Zak permitted the unlicensed practice of dentistry (Counts 1 through 28). Moreover, the Board's decision to remand for consideration of the previously excluded testimony was supported by a thorough analysis of why collateral estoppel did not apply to the criminal proceeding in the Canton Municipal Court. Accordingly, we find no evidence of bias in the hearing examiner's reversal of his earlier ruling on collateral estoppel.
 {¶ 99} Finally, Dr. Zak argues that the hearing examiner ignored or summarily rejected many of his arguments. We disagree. The hearing examiner prepared two detailed and thorough reports. The first Report and Recommendation, issued on August 30, 2001, was 48 pages long and fully analyzed how Dr. Zak's conduct violated the insurance billing provisions of R.C. 4715.30(A)(2). The second Report and Recommendation, issued on July 27, 2002, was 35 pages long and fully analyzed how Dr. Zak's conduct violated the provisions of R.C. 4715.01, R.C. 4715.19, and R.C.4715.30(A)(9) and (B). Moreover, under R.C. 119.09, there is no requirement that the hearing examiner address every argument raised by a party so long as the final report contains a summary of the factual and legal issues, a factual and legal analysis, and a recommendation of the action to be taken by the Board. Accordingly, we find no merit to this allegation and find no evidence of bias.
 {¶ 100} Assignments of error XIX and XX are overruled.
 {¶ 101} "XXI. The trial court erred in holding that, to the extent that the Board's Order purports to revoke Dr. Zak's dental license permanently, the Order does not exceed the Board's authority under R.C. § 4715.30(C).
 {¶ 102} "XXII. The trial court erred in holding that, to the extent that the Board's Order purports to revoke Dr. Zak's license permanently, the Order does not violate Dr. Zak's due process rights.
 {¶ 103} "XXIII. The trial court erred in holding that the Board's sanction (revocation of Dr. Zak's dental license) is not disproportionate to the conduct at issue and therefore is in accordance with law."
 {¶ 104} In these assignments of error, Dr. Zak argues that the Board's order which permanently revoked his license to practice dentistry is excessive. We disagree.
 {¶ 105} Pursuant to R.C. 4715.30(C), the Board is authorized to censure or place on probation the holder of a certificate or license or suspend or revoke a certificate or license for violations under R.C. 4715.30(A). Ohio Adm. Code 715-3-01(D)(1) defines revocation as "permanent loss of license to practice in Ohio."
 {¶ 106} A common pleas court has no authority to modify a penalty that an administrative agency is authorized to and does impose, on the ground that the agency abused its discretion.Henry's Café, Inc. v. Bd. of Liquor Control (1959),170 Ohio St. 233; Sicking v. Ohio State Med. Bd. (1991),62 Ohio App.3d 387, 395. An authorized sanction that is supported by reliable, probative, and substantial evidence will not be overturned.CVS/Pharmacy #3131 v. Ohio State Bd. of Pharmacy, Cuyahoga App. No. 82215, 2003-Ohio-3806; Kuppin v. Ohio State Dental Bd. (May 6, 1994), Montgomery App. No. 14117.
 {¶ 107} Here, the trial court correctly determined that the Board's finding that Dr. Zak violated provisions of R.C. Chapter 4715, was supported by reliable, probative, and substantial evidence, and the Board imposed a penalty authorized by law. As a result, the trial court did not abuse its discretion in refusing to reconsider the Board's decision to permanently revoke Dr. Zak's license or whether such a sanction was excessive.
 {¶ 108} Assignments of Error XXI, XXII, and XXIII are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, J., concurs.
 Calabrese, Jr., J., dissents.
[1] Dr. Diamantis failed the 1991 and 1997 examination. He failed to appear for the 1998 examination because he knew he would not pass. (Tr. of 4/9/02 hearing, pp. 58-59).
[2] There is no provision under R.C. Chapter 119 which allows a hearing examiner to grant summary judgment.
[3] August 30, 2001 Report and Recommendation page 29.
[4] See the August 30, 2001 Report and Recommendation.